# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

No. 10-360V
Filed: August 25, 2017
Not for Publication

```
*************************************
YAKETHA JENKINS, as Parent and      *
Natural Guardian of M.J.,           *
                                    *
                 Petitioner,        *          Attorneys' fees and costs decision;
                                    *          reasonable attorneys' fees and costs;
v.                                  *          time billed for travel
                                    *
SECRETARY OF HEALTH                 *
AND HUMAN SERVICES,                 *
                                    *
                 Respondent.        *
                                    *
*************************************
```

F. John Caldwell, Jr., Sarasota, Fl, for petitioner.
Ann D. Martin, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On September 9, 2015, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) alleging that her minor daughter, M.J., suffered Guillain-Barré syndrome as a result of M.J.'s receipt of Tetanus-Diphtheria-acellular Pertussis vaccine on April 2, 2009.  On February 2, 2015, the undersigned issued a decision awarding damages to petitioner based on the parties' stipulation.  Petitioner filed a motion for attorneys' fees and costs on August 15, 2017.  For the reasons set forth below, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy.  When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure.  If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

## PROCEDURAL HISTORY

Petitioner filed her petition on June 10, 2010, over seven years ago.  Special Master Golkiewicz was assigned the case.

On June 21, 2012, the case was reassigned to the undersigned.

Petitioner made her first demand on respondent on March 13, 2013.  After petitioner's first demand, petitioner spent over a year obtaining an expert to determine whether or not a central line placement constituted "surgical intervention" so that petitioner could satisfy the requirements of the Vaccine Act that the vaccinee either have sequelae lasting more than six months or have surgical intervention while an inpatient in a hospital.  Petitioner made four requests for an extension of time during this period.

On May 27, 2014, petitioner filed an expert report and a memorandum pertaining to whether or not a central line placement constituted "surgical intervention" so that petitioner could satisfy the requirements of the Vaccine Act.

On August 14, 2014, petitioner made another demand on respondent.  The parties settled the case and the undersigned issued a 15-Week Order on October 15, 2014.

On February 2, 2015, the parties filed their stipulation on damages and on the same date, the undersigned issued a damages decision based on the stipulation.  Paragraph 13 on page 3 of the stipulation states:

> Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of M.J.'s estate under the laws of the State of Georgia.

> No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian/conservator of M.J.'s estate.

On July 30, 2015, petitioner moved for a stay on filing for attorneys' fees and costs on the basis that petitioner had retained Georgia counsel to take the necessary steps to obtain guardianship, in response to which the undersigned filed an Order August 3, 2015 suspending the deadline for filing for attorneys' fees and costs, ordering petitioner to file a status report on September 21, 2015.

On September 21, 2015, petitioner filed a status report stating that Georgia counsel was taking steps necessary to obtain guardianship for petitioner and asking for suspension of the deadline for attorneys' fees and costs until state court proceedings were completed.  Petitioner's counsel suggested filing a status report in 60 days or by November 20, 2015.  By non-PDF

2

Order, the undersigned granted petitioner's motion.

On November 18, 2015, petitioner filed a status report saying the Georgia state judge entered an Order in the guardianship matter, instructing an annuity be purchased for petitioner. All terms of the Order were to be completed by January 25, 2016.  Petitioner again moved to continue to stay the deadline for attorneys' fees and costs.  The undersigned again issued a non-PDF Order granting petitioner's motion, but said that if petitioner did not take steps to close the Vaccine Program case by December 18, 2015, the parties must contact the undersigned to set up a status conference.

On January 29, 2016, the undersigned held a telephonic status conference with counsel. Petitioner said that he had sent the judgment to the Georgia attorney and would be speaking to him early the next week about the case.  The undersigned ordered petitioner to file a status report by February 29, 2016 saying when petitioner would be able to satisfy the requirement in paragraph 13 of the parties' stipulation stating petitioner must provide documentation showing she is the legal guardian of M.J.  The undersigned noted that judgment in the case entered almost a year earlier, on February 5, 2015.  The undersigned also stated in an Order dated January 29, 2016, "She finds it shocking that petitioner's counsel has not been able to fulfill the requirement that petitioner become authorized to serve as guardian of M.H.'s estate when he has had almost a year to do so."  The undersigned also noted that paragraph 13 of the stipulation states petitioner represents that she can become duly authorized within 90 days of the date of judgment that she is guardian/conservator of M.J.'s estate.  The undersigned inquired in the Order, "As it is now well past 90 days from the date of judgment, the undersigned would like to know if respondent wants the undersigned to void judgment because petitioner cannot satisfy paragraph 13 of the parties' stipulation."

On February 29, 2016, petitioner filed a status report saying that counsel was working with Georgia counsel to implement the settlement agreement, requested another stay on making a motion for attorneys' fees and costs, and requested filing another status report in 30 days.  On the same date, the undersigned granted petitioner's motion, ordering petitioner to file a status report by March 30, 2016.

On March 30, 2016, petitioner filed a status report saying her counsel had been in active contact with Georgia counsel, adding "Before any pleadings are filed in the Georgia probate court, counsel will share them with Respondent's counsel to be certain the ultimate order meets HHS's requirements."

On March 31, 2016, the undersigned issued an Order citing the Georgia Probate Court website which states, "The natural guardian(s) of a minor is/are the parents, if living, or the parent(s) having legal custody of the minor if the parents are divorced or were never married." The undersigned inquired whether it was necessary to seek an order from a George probate court for petitioner in this case if Georgia probate law already considered petitioner to be the child's legal representative.  The Order required respondent to file a response whether respondent would accept Georgia probate law in lieu of an order from the Georgia probate court.  Respondent's

3

response was due on April 11, 2016.

On April 8, 2016, respondent responded to the undersigned's March 31, 2016 Order, stating that being a guardian is a different legal entity than being a conservator. Only the Georgia Probate Court can appoint the conservator of a minor's estate. Thus petitioner's status under Georgia law as a guardian did not satisfy the terms of paragraph 13 of the parties' stipulation for settlement.

On June 21, 2016, the undersigned issued an Order stating that petitioner's last status report was dated March 30, 2016, almost three months earlier. By July 21, 2016, petitioner was to file a status report stating "when, if ever, petitioner will receive representative authority as the guardian of M.J. from the State of Georgia."

On July 20, 2016, petitioner filed a status report saying her counsel spoke with the Georgia attorney that day who said that an appropriate conservator was being identified in order to meet the requirements of the Vaccine Program. Petitioner's counsel suggested he file another status report in 30 days. On July 21, 2016, by non-PDF Order, the undersigned granted petitioner's motion.

On August 22, 2016, petitioner filed a status report saying that the Georgia attorney told her counsel on August 18, 2016 that the judge in the Georgia probate court would be issuing an amended order appointing a conservator of property for M.J. shortly. Georgia counsel further advised that the judge was hand-selecting a local fiduciary to serve as the conservator. Petitioner's counsel suggested he file another status report in 30 days. In a non-PDF Order on the same date, the undersigned granted petitioner's motion.

On September 21, 2016, petitioner filed a status report stating that her counsel had talked to the Georgia attorney in the past week and the judge in the guardianship case had asked for a conference call with petitioner's counsel to explain the nuances of the Vaccine Program "vis a vis his proposed final order." Petitioner's counsel was in the process of scheduling the phone conference with the Georgia probate judge. Petitioner's counsel stated that if he had not filed a final order from the Georgia state court within 30 days, that he file a status report to advise the undersigned of the proceedings' status. In a non-PDF Order of same date, the undersigned granted petitioner's motion.

On October 24, 2016, which was almost 21 months after judgment entered on the award of damages in this case, petitioner filed an Order on the Petition for Letters of Conservatorship of Minor in the State of Georgia, Probate Court as Exhibit 18. The Georgia judge ordered John B. Barton to be the conservator of M.J.'s estate.

On November 3, 2016, the undersigned held a telephonic status conference with counsel to determine if the naming of someone other than petitioner was in satisfaction of paragraph 13 of the parties' stipulation in this case. Respondent's counsel stated it was. Paragraph 13 also includes the words:

If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of M.J. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian/conservator of the estate of M.J. upon submission of written documentation of such appointment to the Secretary.

On August 15, 2015, petitioner filed a motion for attorneys' fees and costs. Petitioner requests attorneys' fees in the amount of $69,994.70 and attorneys' costs in the amount of $8,719.32. Petitioner also incurred conservator costs in the form of a surety bond for $4,301.00. In accordance with General Order #9, petitioner filed a signed statement saying she has not advanced any funds in the prosecution of her claim. Therefore, in sum, petitioner requests $83,015.02 in attorneys' fees and costs.

On August 23, 2017, respondent filed a response to petitioner's motion explaining he is satisfied that this case meets the statutory requirements for an award of attorneys' fees and costs under 42 U.S.C. § 300aa-15(e)(1)(A)-(B). Resp. at 2. Respondent "respectfully recommends that the [undersigned] exercise her discretion and determine a reasonable award for attorneys' fees and costs." Id. at 3.

Petitioner filed a reply to respondent's response on August 24, 2017. Petitioner says she has met her burden of proving she is entitled to an award of attorneys' fees and costs.

The matter is now ripe for adjudication.

## DISCUSSION

### A. Legal Standard for Attorneys' Fees and Costs

#### 1. In General

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1). It is not necessary for a petitioner to prevail in the case-in-chief in order to receive a fee award as long as petitioner brought the claim in "good faith and there was a reasonable basis for the claim." Id. The special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs. Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); see also Saxton ex rel. Saxton v. Sec'y of HHS, 3 F.3d 1517, 1519 (Fed. Cir. 1993) ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications."). Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).

### 2.   Reasonableness of Requested Attorneys' Fees and Costs

Based on her experience and review of the billing records submitted by petitioner, the undersigned finds that the majority of petitioner's attorneys' fees and costs request is reasonable. However, petitioner's counsel will not receive attorneys' fees for reviewing materials irrelevant to the instant Vaccine Program case.  The undersigned will also reduce petitioner's award for travel time billed by her counsel.

On July 2, 2015, petitioner's counsel charged **$270.00** to review proposed annuity/guardianship documentation. Ex. 21, at 19.  On July 23, 2015, petitioner's counsel reviewed trust proposals at a cost of **$360.00**.  Id.   On July 29, 2015, petitioner's counsel charged **$450.00** to review guardianship/annuity documents.  Id.  On November 18, 2015, petitioner's counsel charged **$390.00** to review the annuity agreement and state court pleadings. Id. at 20.  On March 23, 2016, petitioner reviewed probate materials in anticipation of a telephone conference with John Sandford about the annuity and attended the conference at a cost of **$249.20**.  Id. at 21.  On March 20, 2016, petitioner's counsel charged **$142.40** for legal research regarding qualifications for annuity companies.  Id.  The undersigned will not award attorneys' fees for any of this time because an annuity or a trust were not parts of the settlement agreement and the award of damages.  **Therefore, the undersigned deducts $1,861.60 from petitioners' attorneys' fees and costs award.**

The undersigned also finds that the amount petitioner requests for her attorney's travel is excessive.  Petitioner's counsel billed 7 hours of time at the hourly rate of $300.00 for "travel from Sarasota, Florida to Americus, Georgia by automobile for meeting with client at her home." Ex. 21, at 7.  It is well established that travel time is compensated at 50 percent of counsel's hourly rate when the attorney is not performing work while traveling. See, Carter v. Sec'y of HHS, No. 04–1500V, 2007 WL 2241877 (Fed. Cl. Spec. Mstr. July 13, 2007).  There is no indication that counsel performed work while traveling.  Therefore, 7 hours of petitioner's counsel's time will be compensated at a 50 percent rate.  **Accordingly, the undersigned reduces petitioner's award of attorneys' fees and costs by $1,050.00**.

The court awards **$80,103.42**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and Maglio, Christopher & Toale in the amount of **$80,103.42**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

Dated: <u>August 25, 2017</u>                              <u>s/ Laura D. Millman</u>
                                                          Laura D. Millman
                                                          Special Master